IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DJIBY NAM                          :

                                   :

    v.                             :   Civil Action No. DKC 15-1931

                                   :

2012 INC. d/b/a College Park       :
   Exxon

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendant 2012 Inc. ("Defendant"). (ECF No. 6). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I.  Background

Unless otherwise noted, the following facts are set forth in the complaint. (ECF No. 1). Plaintiff Djiby Nam ("Plaintiff"), a black male originally from Senegal, began working as a cashier at an Exxon gas station in College Park, Maryland (the "Exxon Station") in early 2012. Defendant, a company run by Mr. Iftikhar Ahmad, bought the Exxon Station in August 2012. Plaintiff alleges that his immediate supervisor was Mr. Doug Deputy, Sr. general manager of the Exxon Station. Plaintiff also worked with two of Mr. Deputy Sr.'s family

members at the Exxon Station: Ms. Patty Deputy, his wife at the time, and Mr. Doug Deputy Jr., his son.  All three of the Deputy family members are white.

Plaintiff contends that Mr. Deputy Sr. "showed favoritism to his wife, Patty, and his son, Doug Deputy, Jr." and subjected Plaintiff to worse treatment.  (*Id.* ¶ 19).  He alleges that, although they were all cashiers, Plaintiff was required to perform janitorial and restocking duties.  Plaintiff also avers that he was unable to obtain a set schedule, unlike the other cashiers.  Plaintiff further contends that, after sending multiple letters to Mr. Deputy Sr. and Mr. Ahmad in September 2012 complaining about the perceived favoritism, all three Deputy family members "began to treat Plaintiff in an unprofessional manner" by yelling at him, sending him home early, or not unlocking the door for him to enter the Exxon Station at the start of his shift.  On September 19, Mr. Deputy Sr. sent a letter to Plaintiff responding to his complaints. (ECF No. 10-29).[1]  In the letter, Mr. Deputy Sr. informed Plaintiff that, in response to a customer complaint, Mr. Deputy Sr. determined that the Exxon Station was improperly out of operation during one of Plaintiff's shifts.  Mr. Deputy Sr.

---

[1] Although Plaintiff does not attach Mr. Deputy Sr.'s letter to his complaint, the court may consider documents that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

conveyed that improperly closing the Exxon Station was "an offense that could result in termination if it happens again." (*Id.* at 3).   Plaintiff further avers that he wrote a letter to Mr. Ahmad on September 22, 2012 stating "that he believed that he was being subjected to different treatment and terms of employment because of his race, Black, and national origin, African."  (ECF No. 1 ¶ 23).   Plaintiff asserts that Mr. Ahmad, in response to the letters, suspended Plaintiff without pay on September 24.

On September 26, 2012, Plaintiff filed a charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") and the U.S. Equal Employment Opportunity Commission ("EEOC") (ECF No. 6-1), which he subsequently amended on November 5 (ECF No. 10-2).   After receiving notice of the MCCR charge, Mr. Ahmad told Plaintiff to report to work, but Mr. Deputy Sr. refused to place Plaintiff on the work schedule. (ECF No. 1 ¶ 25).   During a meeting on October 11, Mr. Ahmad said he was transferring Plaintiff to a different gas station that would have required him to commute by bus two hours each way.   Plaintiff avers that his subsequent requests to be transferred to another station in College Park went unanswered.[2]

---

[2] Defendant appears to argue in its motion to dismiss that Mr. Ahmad accepted Plaintiff's offer to transfer to another College Park station.   Plaintiff asserts that he never received such a letter.   At the motion to dismiss stage, Plaintiff's assertions of fact must be taken as true.

At that point, Mr. Ahmad performed a criminal background check on Plaintiff and checked references at his former employers (the "background check").  On January 17, 2013, the MCCR held a fact finding conference, during which Plaintiff alleges that he was officially fired.  According to Plaintiff, Mr. Ahmad said, "[Plaintiff] is a thief and [Defendant didn't] want him back." (*Id.* ¶ 33).

On January 23, 2015, after a significant delay, the MCCR issued a report finding that there was no probable cause to believe that Defendant discriminated against Plaintiff because of race and national origin and wrongfully retaliated against him.  (ECF NO. 6-2).  Plaintiff filed a request for reconsideration with the MCCR, which was denied on March 13, 2015.  (ECF No. 6-3).  On April 17, 2015, the EEOC "adopted the findings of the" MCCR and issued a right to sue letter.  (ECF No. 1-1).

Plaintiff, proceeding *pro se*, commenced this suit by filing a complaint on June 30, 2015.  (ECF No. 1).  The complaint alleges that Defendant discriminated against him on the basis of race and national origin (Counts I and II) and retaliated against him (Counts III and IV) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act ("MFEPA").  Plaintiff also alleges defamation (Count V), and a violation of the Fair Labor

Standards Act ("FLSA") (Count VI). Plaintiff seeks a declaratory judgment, back pay, and compensatory and punitive damages.

On August 20, Defendant moved to dismiss the complaint. (ECF No. 6). Plaintiff was provided with a *Roseboro* notice, which advised him of the pendency of the motion to dismiss and his entitlement to respond within 17 days. (ECF No. 7); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). Plaintiff responded in opposition (ECF No. 10), and Defendant replied (ECF No. 11).

## II. Standards of Review

Defendant's arguments for dismissal – *i.e.*, failure to exhaust administrative remedies, failure to state a claim, untimeliness, and privilege – implicate several standards of review. First, Defendant's arguments that Plaintiff failed to raise certain allegations before the EEOC or MCCR must be analyzed under Fed.R.Civ.P. 12(b)(1) because a Title VII plaintiff's failure to exhaust administrative remedies deprives the federal court of subject matter jurisdiction over such claims. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the

court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore *et al.*, Moore's Federal Practice § 12.30[1] (3d ed. 1998)).  The plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  Dismissal for lack of subject matter jurisdiction is appropriate "only if the material jurisdictional facts are not in dispute" and the defendant is "entitled to prevail as a matter of law." *Id.* (internal marks omitted).  In its analysis, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647.

Second, Defendant's arguments that the complaint fails to state a plausible claim for relief are governed by Fed.R.Civ.P. 12(b)(6).  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4ᵗʰ Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4ᵗʰ Cir. 1993)).   In evaluating the complaint, unsupported legal allegations need not be accepted.   *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4ᵗʰ Cir. 1989).   Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4ᵗʰ Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4ᵗʰ Cir. 2009).   Ultimately, a complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'"   *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4ᵗʰ Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).   To this end, "while a plaintiff [in an employment discrimination

case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Twombly*, 550 U.S. at 555); *see also McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.).

Finally, Defendant argues that Plaintiff's MFEPA claims should be dismissed under Rule 12(b)(6) because they are time-barred and that Plaintiff's defamation claims should be dismissed because the alleged defamatory statements were privileged.  The statute of limitations and the existence of a privilege are affirmative defenses that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c) and are not usually an appropriate ground for dismissal.  *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Mettis*, 203 F.Supp.2d 426, 428 (D.Md. 2002).  Nevertheless, dismissal under Rule 12(b)(6) may be proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).

## III. Analysis

### A.   Title VII and MFEPA

Plaintiff asserts claims of discrimination and retaliation under both Title VII and MFEPA.  MFEPA is the "state-law analogue" to Title VII, and courts routinely interpret the two statutes similarly.  *See Haas v. Lockheed Martin Corp.*, 396 Md. 469, 482 n.8 (2007).  It is only necessary, however, to assess Plaintiff's claims under Title VII because his MFEPA claims are time-barred.  The MFEPA requires that a "civil action [be] filed within 2 years after the alleged unlawful employment practice

occurred." Md. Code, State Gov't § 20-1013(a)(3). The latest discriminatory or retaliatory act Plaintiff alleges is in January 2012, which is well beyond the two year limitation. Thus, it is clear from the face of the complaint that all of Plaintiff's MFEPA claims are time-barred and must be dismissed.

### 1.   Discrimination (Counts I and II)

Plaintiff asserts claims of race and national origin discrimination based on two theories: differential treatment and hostile work environment. To survive a motion to dismiss on a differential treatment claim, a plaintiff must plausibly allege that his employer discriminated against him or otherwise treated him less favorably "with respect to his compensation, terms, conditions, or privileges of employment, because of [his] race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). For a hostile work environment claim, a plaintiff must allege "extreme" conduct that creates a hostile work environment because of his race or national origin. *See Reed v. Airtran Airways*, 531 F.Supp.2d 660, 668-69 (D.Md. 2008).

Although a plaintiff need not satisfy the elements of a *prima facie* case of discrimination at the motion to dismiss stage, he must "assert facts establishing the plausibility of" the discrimination allegation. *Coleman*, 626 F.3d at 190-91. A plaintiff's allegations must allege a situation that is more than *consistent* with discrimination; it must "alone support a

*reasonable inference* that the decisionmakers were motivated by [impermissible] bias." *McCleary-Evans*, 780 F.3d at 586 (citing *Iqbal*, 556 U.S. at 678). Indeed, the United States Court of Appeals for the Fourth Circuit upheld the district court's dismissal of an employment discrimination complaint because it left "open to speculation the cause for the defendant's decision to select someone other than" the plaintiff, and discrimination was "not plausible in light of the 'obvious alternative explanation' that the decisionmakers simply judged those hired to be more qualified and better suited for the positions." *Id.*

Here, Defendant argues that Plaintiff has alleged no facts suggesting that Defendant was racially motivated and that "the only plausible conclusion is that any disparate treatment was a product of nepotism, not racism." (ECF No. 6, at 10). Plaintiff contends that he was treated differently than Ms. Deputy and Mr. Deputy Jr. because of his race or national origin. (ECF No. 1 ¶ 16). Plaintiff also suggests, but does not explicitly assert, that the hostile work environment was due to his race or national origin. (*Id.* ¶ 19). Plaintiff's conclusory allegations are similar to those in *McCleary-Evans*, and the "complaint 'stop[s] short of the line between possibility and plausibility of entitlement to relief.'" *McCleary-Evans*, 780 F.3d at 586 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff cites no similarly situated employees, other

than relatives of his supervisor, who were treated differently in similar situations.   Many of his letters and complaints expressly reference the Deputys' familial relationship as the perceived source of disparate treatment.   (*See* ECF Nos. 10-28; 10-30).   Plaintiff puts forth no facts showing any explicit racial bias.   Moreover, the hostile conduct described in the complaint is "in no way alleg[ed to be] linked to race."   *Reed*, 531 F.Supp.2d at 669-70.   In *Reed*, the court found the hostile work environment was based on a racial bias because the plaintiff alleged that her supervisors made numerous comments that were clearly racially motivated.   By itself, however, a "workplace's racial makeup . . . does not create an inference that the purported conduct was motivated by race."   *Id.* at 670.

Plaintiff's assertions that Defendant's decisions and conduct were based on race "are simply too conclusory.   Only speculation can fill the gaps in [his] complaint."   *McCleary-Evans*, 780 F.3d at 586.   Plaintiff pleads facts showing some level of disparate treatment and a tense workplace environment, but, much like in *McCleary-Evans*, the complaint fails to *plausibly* allege that this was the result of prohibited racial discrimination as opposed to nepotism or other non-prohibited reasons.   Accordingly, Counts I and II will be dismissed.

### 2.   Retaliation (Counts III and IV)

Title VII prohibits retaliation by the employer against employees who engage in a protected activity.  42 U.S.C. § 2000e-3(a); *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2522 (2013).   Protected activity includes opposing "unlawful employment practice[s] . . . or [making] a charge, testif[ying], assist[ing], or participat[ing] in any manner in [a Title VII] investigation, proceeding or hearing."  42 U.S.C. § 2000e-3(a).   Plaintiff alleges that Defendant retaliated against him after he sent the letters complaining about the alleged discriminatory treatment and after he filed his MCCR and EEOC complaint (Counts III and IV).   Specifically, Plaintiff contends that a threat of termination, suspension without pay, attempted transfer to another location, background check, and ultimate termination were retaliatory.[3]

Defendant argues in its motion to dismiss that the court lacks jurisdiction over alleged retaliatory acts that took place after Plaintiff filed his complaint with the MCCR and EEOC on September 26, 2012.   Plaintiff counters that he amended his charge of discrimination on November 5, to include additional instances of alleged retaliation.   Defendant notes that even if Plaintiff did amend the charge, some of the alleged retaliatory

---

[3]   Count III contains all of Plaintiff's claims of retaliation other than retaliatory termination, which Plaintiff alleges in Count IV.

13

acts were not included and thus are barred.  As a general rule, "[o]nly those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citation and internal quotation marks omitted).  There is a relaxed exhaustion requirement for Title VII retaliation claims, however.  *Id.* at 301-04.  As the Fourth Circuit noted in *Jones*, retaliation claims need not be filed in a new EEOC charge if they are reasonably related to allegations in an EEOC charge properly before the court and pertaining to conduct that occurred after the EEOC charge was filed.  *Id.*  Here, Plaintiff's proposed retaliation claims all relate to charges that are properly before the court.  Plaintiff need not have filed a separate EEOC charge in order for the claims to be heard.

To establish a *prima facie* case of retaliation, Plaintiff ultimately will have to show that: (1) he engaged in a protected activity; (2) in response, his employer acted adversely against him; and (3) the protected activity was causally connected to the adverse action.  *Fordyce v. Prince George's County Md.*, 43 F.Supp.3d 537, 547 (D.Md. 2014) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).  "The

antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 67 (2006).   "Unlike for discrimination claims, a plaintiff need not establish an 'ultimate employment decision' to make a *prima facie* case of retaliation." *Fordyce*, 43 F.Supp.3d at 547-48 (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004)).   Rather, he must show a *materially adverse* employment action, meaning that the "employer's actions must be harmful to the point that they could well dissuade a *reasonable* worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57, 67-68 (emphasis added).   "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits' of the plaintiff's employment." *James*, 368 F.3d at 375 (internal quotation marks omitted).   Each alleged retaliatory act will be considered in turn.

  **a. Threat of Termination**

  Plaintiff alleges that Mr. Deputy Sr. sent Plaintiff a letter "with a threat of termination" on September 19, 2012. (ECF Nos. 1 ¶ 21; 10-29).   Mr. Deputy Sr. informed Plaintiff that the Exxon Station was improperly out of operation during one of Plaintiff's shifts and that "[t]his is an offense that could result in termination if it happens again."   (ECF No. 10-

29, at 3).   Plaintiff argues that this "threat" was made in retaliation for his complaints about the disparate treatment. Plaintiff has not plausibly stated a claim for retaliation as to the threat of termination.   Assuming that Plaintiff has plausibly shown it was causally related to a protected activity, the letter does not constitute an adverse employment action, even considering the lower standards required to state a retaliation claim.   Mr. Deputy Sr. did not threaten to terminate Plaintiff; he merely informed Plaintiff that he *could* be terminated if he committed *another* offense.   Nothing in the terms or conditions of Plaintiff's employment changed at all by the receipt of the letter.   A reasonable person would not find Mr. Deputy's letter to be a materially adverse employment action.   Accordingly, Plaintiff's retaliation claim as to the threat of termination will be dismissed.

   **b.   Suspension Without Pay**

   Plaintiff avers that he sent a letter to Mr. Ahmad on September 22, 2012 stating that "he believed that he was being subjected to different treatment and terms of employment because of his race, Black, and national origin, African." (ECF No. 1 ¶ 23).[4]   Plaintiff alleges that, in response to this letter, Mr. Ahmad suspended him without pay on September 24.   Defendant

---

[4] Plaintiff attaches some letters to his opposition to Defendant's motion, but has not attached the September 22, 2012 letter.

argues that Plaintiff's letter to Mr. Ahmad was not a protected activity because "the only plausible conclusion is that the complaints were grounded in nepotism" and "complaining about [nepotism] is not protected activity." (ECF No. 6, at 13). Defendant also argues Plaintiff's suspension was not causally related to the protected activity.[5]

Protesting unfair treatment and other workplace conduct that is not prohibited by Title VII is not protected activity. *See Harris v. Md. House of Correction*, 209 F.Supp.2d 565, 570 (D.Md. 2002). Here, however, Plaintiff has alleged that his letter explicitly stated that he was being discriminated against because of his race. The Fourth Circuit has held "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F.App'x 272, 282 (4th Cir. 2012) (citing, *inter alia*, EEOC Compliance Manual § 8-II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination.")); *see also Strothers v. City of Laurel, Md.*, No. PWG-14-3594, 2015 WL 4578051, at *10 (D.Md. July 27, 2015) (denying a motion to dismiss retaliation claim because the plaintiff complained about

---

[5] Defendant's motion to dismiss does not dispute that the suspension is an adverse employment action.

"harassment," which was sufficient to put employer on notice that she was complaining about racial discrimination).

Moreover, the Fourth Circuit has expanded the scope of what constitutes a protected activity. *See, e.g., DeMasters v. Carilion Clinic*, 796 F.3d 409, 416-21 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 285-88 (4th Cir. 2015) (en banc). As Judge Grimm noted recently, this "broad[er] reading of Title VII extends its protection to an employee who reasonably fears that she is being subjected to unfavorable treatment based on her sex [or race], even where, as here, that treatment does not rise to the level of creating a hostile work environment." *Young v. Giant Food Stores, LLC*, No. PWG-14-2006, 2015 WL 35560009, at *11 (D.Md. June 8, 2015). The court in *Young* found that the plaintiff's protest was a protected activity even though she did not plead a plausible hostile work environment claim. *Id.* at *11-12. The court held that her protests were a protected activity because the plaintiff had a reasonable belief that the workplace activity was a violation of Title VII and clearly indicated that she was complaining about gender discrimination rather than general workplace grievances. *See id.* Thus, a plaintiff can state a plausible claim of retaliation even if the underlying discrimination claim has not been pleaded with sufficient particularity.

18

Defendant also argues that Plaintiff has not plausibly alleged that retaliatory animus was the "but for" cause of the suspension. *See Nassar*, 133 S.Ct. at 2533 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."). Defendant contends that Plaintiff was suspended without pay so Mr. Ahmad could complete an investigation. (ECF No. 6, at 12). The Fourth Circuit has held that "a causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment against an employee shortly after learning of the protected activity." *See Pepper v. Precision Valve Corp.*, 526 F.App'x 335, 337 (4th Cir. 2013) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)) (internal quotation marks omitted). Here, Mr. Ahmad suspended Plaintiff two days after Plaintiff sent the letter. In addition, Plaintiff alleges that Mr. Ahmad referenced the letter as a reason for the suspension. Taken together, the temporal proximity and Mr. Ahmad's alleged statements are sufficient to state a plausible causal connection between Plaintiff's protected activity and his suspension. Accordingly, Plaintiff's claims of retaliation as to his suspension will remain.

### c.   Attempted Forced Transfer

Plaintiff alleges that his attempted forced transfer to another station was retaliation for his filing of the MCCR and

19

EEOC complaint.  (ECF No. 1 ¶ 25).  Filing the MCCR and EEOC charge constituted a protected activity.[6]  Defendant argues that the transfer was not causally related to the protected activity and was rather an attempt to diffuse the "friction" between Plaintiff and the Deputy family.  (*See* ECF No. 6, at 12).  Much like Plaintiff's suspension, the transfer is in temporal proximity to the protected activity.  Temporal proximity "alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'"  *Pepper*, 526 F.App'x at 337 (quoting *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001) (per curium) (internal quotation marks omitted)).  Here, Mr. Ahmad discussed the transfer with Plaintiff approximately two weeks after Plaintiff filed the MCCR and EEOC complaint.  The Fourth Circuit has held that a ten-week period between a protected activity and adverse employment action "gives rise to a sufficient inference of causation." *King v. Rumsfeld*, 328 F.3d 145, 151, 151 n.5 (4th Cir. 2003). Thus, although Plaintiff alleges less additional facts showing a retaliatory animus, this is not fatal to his effort to state a claim.  Accordingly, Plaintiff's retaliation claim as to the forced transfer will remain.

---

[6] Defendant does not argue, and the court does not analyze, whether the transfer was an adverse employment action.

### d.   Criminal Background and Reference Check and Resulting Termination

Plaintiff alleges that Defendant selectively conducted a criminal background and reference check in retaliation for his protected activity. (ECF No. 1 ¶¶ 26-29). He also asserts that, on January 17, 2013, his employment was officially terminated as a result of the background check. (*Id.* ¶ 31). Defendant counters that the background check was not an adverse employment action and that Plaintiff has not pleaded facts plausibly showing that he was terminated in retaliation. (ECF No. 6, at 12-13). To be a materially adverse employment action, the "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 57, 67-68. Specifically, an action must "adversely affect the terms, conditions, or benefits' of the plaintiff's employment." *James*, 368 F.3d at 375 (internal quotation marks omitted).

Here, it is possible that the prospect of a background check in and of itself might not dissuade a reasonable worker from making a charge of discrimination. Conduct short of an ultimate employment decision becomes relevant, however, if it is a "mediate step . . . relied upon for a true adverse employment action." *Ruffin v. Lew*, No. PWG-11-2469, 2014 WL 4854972, at *8 (D.Md. Sept. 29, 2014) (internal quotation marks omitted)

(quoting *Jeffers v. Thompson,* 264 F.Supp.2d 314, 330 (D.Md. 2003)). Thus, the two allegations are appropriately analyzed together; even if the background check is not, by itself, an adverse employment action, it may give rise to a retaliation claim when coupled with Plaintiff's termination. *See Suggs v. 7-Eleven, Inc.*, No. DKC-14-1903, 2015 WL 3891949, at *7-8 (D.Md. June 23, 2015). Subjecting Plaintiff to a background check "can be viewed as a *mediate step* that was relied upon in making [the] true adverse employment action" of terminating Plaintiff. *Id.* at *8. "[T]he consequences of [the background check], namely [termination], could certainly dissuade a reasonable employee from filing a discrimination claim." *Id.*

In addition, Plaintiff has plausibly alleged a causal connection between his protected activity and the background check and termination. Defendant conducted the background check within weeks of his protected activity and as the MCCR's investigation was ongoing. According to Plaintiff, he was officially terminated at the MCCR factfinding conference. Moreover, Plaintiff avers that he was the only employee to be subjected to such a background check, further supporting his causation argument. (ECF No. 1 ¶ 27). Plaintiff has alleged facts sufficient to show, at the motion to dismiss stage, that the background check and termination, when viewed together, are causally related to his protected activity.

Accordingly, Plaintiff's claims for retaliation based on the background check (Count III) and termination (Count IV) will remain.

**B.   Defamation (Count V)**

Plaintiff alleges that Mr. Ahmad defamed him by accusing him of being a thief during the MCCR fact finding conference meeting on January 17, 2013.   (ECF No. 1 ¶ 33).   Defendant argues that the statement was either absolutely or conditionally privileged and thus cannot be the basis for a defamation claim. (ECF No. 6, at 13-16).[7]

In the case of *Norman v. Borison*, 418 Md. 630 (2011), the Court of Appeals of Maryland explored the contours of the absolute judicial privilege.   The court observed that "witnesses, parties, and judges" enjoy "absolute immunity from civil liability" for statements made in a judicial proceeding, "even if the statement is wholly unrelated to the underlying proceeding."   *Id.* at 650.   The privilege also extends to statements made in connection with quasi-judicial proceedings, such as administrative proceedings, if the proceeding satisfies the two part test of *Gersh v. Ambrose*, 291 Md. 188 (1981). *Gersh* dictates that, in deciding whether a proceeding gives rise to an absolute privilege, a court must consider "'(1) the nature

---

[7] Defendant only argues for dismissal based on privilege, it does not, at this point, challenge the substance of Plaintiff's defamation claim.

of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.'" *Norman*, 418 Md. at 652 (quoting *Gersh*, 291 Md. at 197). The Court of Appeals has recently increased the scope of the absolute privilege against defamation in quasi-judicial proceedings. *See Norman*, 418 Md. 630; *Offen v. Brenner*, 402 Md. 191 (2007). In addition, "Maryland has long adhered to the so-called 'English' rule of privilege for witnesses' statements, the privilege is absolute without regard to the relevancy of the defamatory statement to the subject matter of the proceedings." *Odyniec v. Schneider*, 322 Md. 520, 527 (1991) (citations omitted).

This court has previously held that statements made before the MCCR are absolutely privileged. Judge Motz held that "any statements made by [the defendant] to the [MCCR] in defending against plaintiff's complaint are absolutely privileged in light of the nature of [MCCR] proceedings and the fact that the [MCCR's] procedures provide adequate procedural safeguards against the occurrence of defamatory statements." *Booth v. Total Health Care, Inc.*, 880 F.Supp. 414, 416 (D.Md. 1994) (citing *Minor v. Novotny*, 304 Md. 164 (1985)).[8] Accordingly, because the complaint alleges that the statement in question was

---

[8] *Booth* referred to the "Human Relations Commission." This has since become the MCCR. *See* Md. Code, State Gov't § 20-201.

made as part of an MCCR proceeding, it is absolutely privileged, and Count V will be dismissed.[9]

### C.  FLSA (Count VI)

Plaintiff alleges that Defendant violated the FLSA by selectively subjecting him "different terms and conditions for employment" than other employees such as conducting a criminal background and reference check and transferring Plaintiff to another location.  (ECF No. 1 ¶ 34-38).  The FLSA "mandate[es] a minimum wage for covered employees [and] requires the payment of overtime for each hour worked in excess of forty per work week." *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)). Plaintiff has alleged no facts plausibly stating a FLSA violation.  Accordingly, Count VI will be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.  A separate order will follow.

                    /s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[9] It is not necessary to determine if a qualified privilege also applies.