IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DJIBY NAM                              :

                                       :

    v.                                 :   Civil Action No. DKC 15-1931

                                       :

2012 INC. d/b/a College Park           :
    Exxon

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are (1) a motion for summary judgment filed by Defendant 2012, Inc. ("Defendant") (ECF No. 21); (2) Defendant's motion to strike the supplemental response of Plaintiff Djiby Nam ("Plaintiff") (ECF No. 26); and (3) Plaintiff's motion "for leave to amend the scheduling order, extend the discovery deadlines and/or allow Plaintiff to identify Does 1-4" (ECF No. 28).[1]  The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.  For the following reasons, Defendant's motion for summary judgment will be granted, Defendant's motion to strike will be denied as moot, and Plaintiff's motion will be denied.

---

[1] Although Plaintiff filed this motion on December 19, it appears to have been construed mistakenly as a duplicate of his supplemental response. (ECF No. 25).  The motion was properly identified and electronically filed on March 13, 2017. Defendant has not yet responded to the motion.

## I.   Background[2]

Plaintiff, a black male originally from Senegal, began
working as a cashier at an Exxon gas station in College Park,
Maryland ("College Park Exxon") in early 2012. (ECF No. 21-3,
at 68, 81). Plaintiff's immediate supervisor at College Park
Exxon was Doug Deputy, Sr. (*Id.* at 84). College Park Exxon
also employed two of Mr. Deputy, Sr.'s family members as
cashiers: Patty Deputy, his wife at the time, and Doug Deputy,
Jr., his son. (*Id.*). All three of the Deputy family members
are white. (*Id.*). Defendant bought College Park Exxon in
August 2012. (*Id.* at 81). Defendant retained Mr. Deputy, Sr.
as manager, and Plaintiff, Ms. Deputy, and Mr. Deputy, Jr.
continued to work as cashiers under the new ownership after Mr.
Deputy, Sr. conducted a re-application process. (*Id.* at 86).

Plaintiff contends that, although he, Ms. Deputy, and Mr.
Deputy, Jr. held the same position, he was required to perform
janitorial and restocking duties that the other two cashiers
were not asked to do. (*Id.* at 86-87). On September 3, 2012,
Plaintiff sent a letter to Mr. Deputy, Sr. and Iftikhar Ahmad,
one of Defendant's owners and its original director in 2012.
(*Id.* at 12, 18). Plaintiff complained about the extra work he
was being asked to do and stated that it was illegal for Mr.

---

[2] Unless otherwise noted, the facts outlined here are
undisputed and construed in the light most favorable to
Plaintiff.

Deputy, Sr. to "treat [Ms. Deputy and Mr. Deputy, Jr.] a certain way and the rest of the employees a different way." (*Id.*).   On September 18, Plaintiff sent a letter to Mr. Ahmad only, complaining that Mr. Deputy, Sr. had apparently discussed Plaintiff's allegations of favoritism with the other Deputy family members, and that the entire family, including Mr. Deputy, Sr., had begun "to treat Plaintiff in an unprofessional manner" by yelling at him, sending him home early, or not unlocking the door for him to enter the station at the start of his shift. (*Id.* at 21).   After another letter from Plaintiff to Mr. Deputy, Sr. and Mr. Ahmad about perceived favoritism, Mr. Deputy, Sr. sent a reply letter to Plaintiff on September 19. (ECF No. 10-29).   In the letter, Mr. Deputy, Sr. responded to Plaintiff's allegations; he also informed Plaintiff that he had received a customer complaint about the station being closed and had determined that College Park Exxon was improperly out of operation during one of Plaintiff's shifts. (*Id.*).   Mr. Deputy, Sr. stated that improperly closing the station was "an offense that could result in termination if it happens again." (*Id.*). Plaintiff responded with a letter to Mr. Ahmad the same day, September 19, refuting these allegations. (ECF No. 21-3, at 23).   Three days later, on September 22, Plaintiff again wrote to Mr. Ahmad stating "that he believed that he was being subjected to different treatment and terms of employment because

of his race, Black, and national origin, African." (*Id.* at 24-
25). On September 24, Mr. Ahmad suspended Plaintiff without pay
"to investigate his complaints and to allow workplace tensions
to cool off." (*Id.* at 4). Plaintiff never worked again for
Defendant, but there is a dispute as to whether he abandoned the
job or was terminated.

On September 26, 2012, Plaintiff filed a charge of
discrimination with the Maryland Commission on Civil Rights
("MCCR") and the U.S. Equal Employment Opportunity Commission
("EEOC") (ECF No. 6-1), which he subsequently amended on
November 5 (ECF No. 10-2). During a meeting on October 11, Mr.
Ahmad offered to transfer Plaintiff to a different gas station,
Aspen Hill Gas. (ECF No. 21-3, at 27). Commuting to Aspen Hill
Gas would have taken Plaintiff two hours each way, so he sought
clarification as to whether this transfer was mandatory in order
to retain his employment. (*Id.* at 28). Mr. Ahmad then mailed a
certified letter to Plaintiff offering him a position at a third
station, Interstate Shell, which was in College Park and was
actually closer to where Plaintiff was living than College Park
Exxon had been. (ECF Nos. 21-3, at 31; 21-1 ¶¶ 9, 22, 23).
This letter was returned to Defendant unopened, and Plaintiff
affirms that he never received this offer. (ECF Nos. 21-1 ¶ 25;
23-1 ¶ 22).

On January 23, 2015, the MCCR issued a report finding that there was no probable cause to believe that Defendant discriminated against Plaintiff because of his race and national origin or wrongfully retaliated against him. (ECF No. 6-2). Plaintiff filed a request for reconsideration with the MCCR, which was denied on March 13. (ECF No. 6-3). On April 17, the EEOC adopted the findings of the MCCR and issued a right to sue letter. (ECF No. 1-1).

On June 30, Plaintiff, proceeding *pro se*, filed the instant suit seeking declaratory judgment, back pay, and compensatory and punitive damages. (ECF No. 1). The complaint alleged that Defendant, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act ("MFEPA"), discriminated against Plaintiff on the basis of his race and national origin (Counts I and II) and retaliated against him by taking various adverse actions against him (Count III) and eventually terminating his employment (Count IV). Plaintiff also alleged defamation (Count V), and a violation of the Fair Labor Standards Act ("FLSA") (Count VI). On August 20, Defendant moved to dismiss the complaint. (ECF No. 6). The court found that Plaintiff's MFEPA claims were time-barred and that he had failed to plead sufficient facts to support his FLSA claim, his retaliation claim as to the threat of termination, and his Title VII discrimination claims. (ECF No. 12, at 9-12,

15-16,  25).    Counts  I,  II,  and  VI  were  therefore  dismissed.
(ECF  No.  13).    Count  V  was  also  dismissed  because  Plaintiff's
defamation  claim  was  based  on  a  privileged  statement  made  before
the  MCCR.   (ECF  No.  12,  at  23-25).    Plaintiff's  other  claims  of
retaliation  in  Count  III  and  his  claim  for  retaliatory
termination  in  Count  IV  remain  in  dispute.

Defendant  filed  the  instant  motion  for  summary  judgment  on
June  23,  2016.    (ECF  No.  21).    Plaintiff  responded  on  July  14
(ECF  No.  23),  and  Defendant  replied  on  July  21  (ECF  No.  24).    On
December  16,  Plaintiff  filed  a  supplement  to  his  opposition,
stating  that  he  had  incorrectly  numbered  several  of  his
responses  to  Defendant's  statement  of  undisputed  facts.    (ECF
No.  25).    Plaintiff  filed  his  additional  motion  three  days  later
on  December  19.    (ECF  No.  28).    Defendant  moved  to  strike
Plaintiff's  supplemental  response  (ECF  No.  26),  and  Plaintiff
responded  to  Defendant's  motion  to  strike  (ECF  No.  27).

## II.  Standard of Review

A  motion  for  summary  judgment  will  be  granted  only  if  there
exists  no  genuine  dispute  as  to  any  material  fact  and  the  moving
party  is  entitled  to  judgment  as  a  matter  of  law.    *See*
Fed.R.Civ.P.  56(a);  *Celotex  Corp.  v.  Catrett*,  477  U.S.  317,  322
(1986);  *Anderson  v.  Liberty  Lobby,  Inc.*,  477  U.S.  242,  250
(1986);  *Emmett  v.  Johnson*,  532  F.3d  291,  297  (4th  Cir.  2008).    A
dispute  about  a  material  fact  is  genuine  "if  the  evidence  is

such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

## III. Analysis

A Title VII claim for retaliation under 42 U.S.C. § 2000e-3 requires that a plaintiff's "employer" take an adverse action against him.  42 U.S.C. § 2000e-3(a).  For Title VII purposes, the term "employer" incorporates a numerosity requirement of fifteen or more employees.  42 U.S.C. § 2000e(b).  Plaintiff does not refute Defendant's evidence that College Park Exxon had fewer than fifteen employees and that the Defendant's only business was College Park Exxon.  Instead, he argues that College Park Exxon and the other gas stations owned by Mr. Ahmad should be considered a single entity.  (ECF No. 23-2, at 22).

Plaintiff's argument appears to be that College Park Exxon and the other gas stations owned by Mr. Ahmad and his family are an "integrated enterprise."  Under the integrated enterprise doctrine, courts have found that some separate companies are "so interrelated that they constitute a single employer."  *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).[3] Because the doctrine imputes responsibility onto one company for the actions of another, "[i]ntegration is usually found between a parent and a subsidiary, and even then 'only in extraordinary

---

[3] *Arbaugh* clarified that the numerosity requirement in the definition of an "employer" is not an element of subject matter jurisdiction, but rather an element of a plaintiff's substantive claim.

circumstances.'"  *Takacs v. Flore*, 473 F.Supp.2d 647, 656 (D.Md. 2007) (quoting *Johnson v. Flowers Indus.*, 814 F.2d 978, 981 (4th Cir. 1987)).  "Such situations are the exception," and "limited liability remains the rule" unless the employer "'exercises a degree of control that exceeds the control normally exercised by a parent corporation.'"  *Johnson*, 814 F.2d 981 (quoting *Armbuster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983)).

The test to determine whether separate entities constitute an integrated employer involves four elements: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control."  *Hukill*, 192 F.2d at 443.  "No one factor is controlling, and not every factor is required."  *Laurin v. Pokoik*, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004); *see also Armbruster*, 711 F.2d at 1338 ("All four criteria need not be present in all cases."), *abrogated on other grounds by Arbaugh*, 546 U.S. 500 (2006).

Plaintiff contends that Aspen Hill Gas and Interstate Shell should be considered integrated with College Park Exxon because Mr. Ahmad told him, "I own other stations [and] can move employees around."  (ECF No. 21-3, at 85).  Thus, two pieces of evidence support his argument that these businesses should be considered integrated.  First, Mr. Ahmad was a common owner.  (*See* ECF No. 24-1 ¶¶ 2, 5).  Second, Mr. Ahmad offered to

transfer him from College Park Exxon to Aspen Hill Gas and Interstate Shell. (ECF No. 21-3 ¶¶ 13-18).

Common ownership, "standing alone, can never be sufficient" to establish liability as an integrated enterprise. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993) (citing *Wood v. S. Bell Tel. & Tel. Co.*, 725 F.Supp. 1244, 1249 (N.D.Ga. 1989) (emphasizing that the "existence of a parent-subsidiary relationship is not enough to impose liability on the parent" because corporate ownership encompasses certain rights to control the corporation, "such as the right to choose directions and set general policies, without forfeiting the protection of limited liability")). Moreover, Mr. Ahmad declares that (1) he was a one-third owner of College Park Exxon; (2) he was a one-third owner of the corporation that owns and operates Interstate Shell, and (3) he did not own any part of Aspen Hill Gas. (ECF No. 24-1 ¶¶ 2, 5-7).[4] Mr. Ahmad declares that two of his sons owned Aspen Hill Gas and that "family members" owned the other two-thirds of Interstate Shell, but he does not state who owned the other two-thirds of Defendant. (*Id.*). There is some ambiguity as to who owned the remaining shares of College Park Exxon and Interstate Shell, but it is undisputed that Mr. Ahmad

_____

[4] The ownership shares identified are actually shares of the corporate entities that owned and operated each of these gas stations: Defendant 2012, Inc.; W.B., Inc.; and Babar, LLC, respectively. (ECF No. 24-1 ¶¶ 2, 5-8).

owned less than a majority of these two stations, and that there is at least some non-common ownership among these three businesses.

Transfer of employees across different businesses is considered part of the interrelation between operations element, which can be shown in a variety of ways. *Hukill*, 192 F.3d at 443. The *Hukill* court noted that courts might look at: whether the companies purchase services from one another; whether employees could be transferred between the companies; whether the companies made bulk purchases together; whether the companies advertised together or implied affiliation in their business dealings; whether the companies have separate locations; whether they file taxes together or separately; whether they have separate bank accounts; and whether they share office space. *Id.* In Mr. Ahmad's declaration, he states that the companies were separately organized; operate at separate locations, each run by separate on-site managers with hiring and firing authority; have separate payrolls, bank accounts, and insurance policies; and file their tax returns separately. (ECF No. 24-1 ¶ 8; *see also* ECF No. 21-3, at 85-86). Although Mr. Ahmad offered to transfer Plaintiff from College Park Exxon to the other locations, no other employee has ever been offered or completed a transfer from one station to another. (*Id.* ¶ 9). These businesses thus appear to have had very little

interrelatedness outside of the transfer offer that Mr. Ahmad made to Plaintiff.

In light of the evidence Plaintiff has put forth, the facts of *Hukill* are particularly instructive here. In that case, one of the defendants, William McGillicuddy owned 100% of an automotive service station business and 50% of seven other corporations: three other service stations, three tire centers, and an administrative services contractor that provided the payroll, bookkeeping, and human resources functions for the other seven companies. *Id.* at 439. Mr. McGillicuddy was the president and chief executive officer of each of these corporations, but hired separate on-site managers for each corporation. *Id.* Mr. McGillicuddy would establish wages and benefits, but otherwise did not "get involved in the operational and employment matters of each station unless requested." *Id.* After the plaintiff in the case left work for six weeks to undergo major surgery, he was told by the manager at his service station that he had been replaced and there was no more work for him at that station. *Id.* at 440. Two weeks later, Mr. McGillicuddy offered the plaintiff a position at another service station. *Id.*

The Fourth Circuit held that Mr. McGillicuddy's businesses could not be considered an integrated enterprise. *Id.* at 444. Although Mr. McGillicuddy was a common manager and there was

12

significant evidence of interrelation among the businesses –
including transferring some employees from one station to
another – the Fourth Circuit found that the lack of centralized
control of day-to-day labor relations, including the powers to
hire, fire, supervise employees and to set work schedules,
weighed heavily against finding integration. *Id.* at 443-44.
Moreover, the court emphasized that Mr. McGillicuddy's partial,
but not identical, ownership of the various companies was
insufficient. *Id.* at 444 (citing *Johnson*, 814 F.2d at 982
("One-hundred percent ownership and identity of directors and
officers are, even together, an insufficient basis for applying
an alter ego theory to pierce the corporate veil.")).

Here, the evidence similarly shows that Mr. Ahmad was only
a partial owner of Defendant, and the transfer that Mr. Ahmad
offered to Plaintiff must be weighed against the numerous ways
in which College Park Exxon, Aspen Hill Gas, and Interstate
Shell operated independently. Even if Mr. Ahmad could be viewed
as a common manager – the first integrated employer factor – in
light of his oversight of College Park Exxon and his offer to
transfer Plaintiff to the other stations, there is no evidence
that he managed any station any more actively than Mr.
McGillicuddy did in *Hukill*. As for the third integrated
enterprise factor, "centralized control of labor relations," the
record shows that Mr. Deputy, Sr. was generally responsible for

interviewing and hiring, setting schedules, and assigning work tasks at College Park Exxon (ECF No. 21-3, at 86); that the other gas stations had their own site managers (ECF No. 24-1 ¶ 8); and that Mr. Ahmad did not get involved in these matters until Plaintiff began sending him letters complaining about Mr. Deputy, Sr.   Thus here, as in *Hukill*, this third and "most critical factor" weighs against Plaintiff.   *Hukill*, 192 F.2d at 442, 444.   Considering each of the four elements and the factual resemblance between this case and *Hukill*, it is clear as a matter of law that Defendant is not integrated with Aspen Hill Gas or Interstate Shell.   Accordingly, Defendant does not qualify as an employer under Title VII, and its motion for summary judgment will be granted.

**IV.  Motion to Strike**

Defendant also moves to strike Plaintiff's supplemental response correcting paragraphs 30-40 of his statement of disputed facts.   (ECF Nos. 25; 26).   In reaching the decision above, Plaintiff's responses in those paragraphs were not considered material.   Therefore, Defendant's motion will be denied as moot.   *See Wheeler v. Leonard*, No. DKC-2008-0774, 2010 WL 1141199, at *5 n.2 (D.Md. Mar. 22, 2010); *L.M.P. Serv., Inc. v. Shell Oil Co.*, 116 F.Supp.2d 645, 648 (D.Md. 2000).

**V.   Plaintiff's Motion**

14

Plaintiff labeled his pending motion as a "motion for leave to amend the scheduling order, extend the discovery deadlines and/or allow Plaintiff to identify Does 1-4." (ECF No. 28-1).[5] In the motion, he seeks leave to amend his complaint to identify W.B. Inc., Babar LLC, Mr. Ahmad, and Mr. Ahmad's son Iftikhar Babar as the first four of the ten unnamed defendants in his original complaint. (ECF No. 28, at 3-4).[6] By identifying these Defendants, Plaintiff clearly aims to bolster his argument that Defendant is an integrated enterprise with Interstate Shell and Aspen Hill Gas. Plaintiff has not produced evidence of any discriminatory or retaliatory acts by W.B. Inc., Babar LLC, or Iftikhar Babar. To the degree that he has produced evidence that Mr. Ahmad individually discriminated against him, Title VII "do[es] not provide for causes of action against defendants in

---

[5] Plaintiff seeks relief under Fed.R.Civ.P 15(a)(2), which relates to amending pleadings. (ECF No. 28, at 3). He also argues in the motion that discovery should be reopened because the parties have an ongoing discovery dispute. (*Id.* at 2-3). None of the discovery requests Plaintiff contends Defendant has failed to comply with relate to the number of people employed by Defendant or the relationships between Defendant and the other gas stations. Accordingly, they would be immaterial to the court's decision, even if Plaintiff's motion were construed as a motion to compel.

[6] Plaintiff identified Mr. Ahmad as a Defendant in his complaint but failed to include him in the caption or serve him in his individual capacity. (ECF No. 1 ¶ 13). Although Plaintiff made numerous allegations as to Mr. Ahmad's conduct in the complaint, he now curiously seeks to name Mr. Ahmad as one of the ten defendants whose identities he did not know at the time he filed his complaint. (*Id.* ¶ 15).

their individual capacities." *Jones v. Sternheimer*, 387 F.App'x 366, 368 (4th Cir. 2010) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999)).  Plaintiff also has not provided any evidence that he was employed by Mr. Ahmad as opposed to 2012, Inc.  As discussed above, Plaintiff was hired to work at College Park Exxon prior to the purchase of the station by Defendant, and by extension, Mr. Ahmad.  (ECF No. 21-3, at 81).  Even after Defendant took ownership of the station, Plaintiff was interviewed and re-hired by Defendant's employee, Mr. Deputy, Sr.  (*Id.* at 86).  Mr. Ahmad's ownership of Defendant does not make him Plaintiff's employer.  *See Johnson*, 814 F.2d at 982 ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying an alter ego theory to pierce the corporate veil.").  Nor does his general oversight of the gas station warrant piercing the corporate veil.  *See Wood*, 725 F.Supp. at 1249 ("Ownership of a controlling interest in a given corporation enables the owner to exercise control of the normal incidents of stock ownership, such as the right to choose directions and set general policies, without forfeiting the protection of limited liability.") (citing *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 180 (5th Cir. 1981)).  Because none of the four identified potential defendants qualifies as Plaintiff's employer, amending

his complaint to add them would be futile. Therefore, Plaintiff's motion will be denied.

Moreover, Plaintiff sued a total of ten unidentified defendants, about which he stated only that "[he] does not know the true identity of the Defendants sued as Does 1-10 and therefore will amend this complaint to allege their true identities when those identities become known." (ECF No. 1 ¶ 15). Plaintiff failed to make any factual allegations attributable to these unnamed defendants in his complaint, and, has not provided any evidence that anyone other than Defendant 2012, Inc. qualifies as his employer under Title VII. Accordingly, Plaintiff's complaint will be dismissed as to all unnamed defendants.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion will be denied, Defendant's motion for summary judgment will be granted, and Defendant's motion to strike will be denied as moot. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge